No. 62,816

STATE OF KANSAS, *Appellee*, v. JESSIE L. JONES, *Appellant*.

(787 P.2d 726)

Opinion filed March 2, 1990.

*Benjamin C. Wood*, special assistant appellate defender, argued the cause and *Steven R. Zinn*, deputy appellate defender, was with him on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Nick A. Tomasic*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: In this action Jessie Jones appeals from jury convictions of two counts of first-degree murder, K.S.A. 21-3401; and two counts of aggravated battery, K.S.A. 21-3414. Jones was sentenced to life imprisonment on each count of first-degree murder and received a three- to ten-year sentence on each count of aggravated battery. All sentences are to run concurrently.

This case arises from a drug transaction. On the morning of January 14, 1988, Julia Dawn, Frank Morris, Michael Mills, and

Donna Barrett were gathered at Barrett's residence at 916 Haskell in Kansas City, Wyandotte County, Kansas. Dawn was there to lend her car to Mills and Barrett. Morris was present to lend Mills a suitcase. Soon after Morris' arrival, Mills informed him that someone was coming over to conduct a drug deal.

The record clearly establishes that Jessie Jones was involved in the shooting spree which followed. Julia Dawn testified that three men came to the residence shortly after she arrived. She saw Damon Huff carrying a handgun and Jessie Jones a shotgun. Dawn heard loud talking before she was shot in the head and lost consciousness.

Frank Morris testified that Damon Huff and Darrell Stallings arrived shortly after Dawn arrived. Morris saw Jessie Jones enter soon after and saw that he carried a shotgun. While seated on the couch with the others, Morris saw Jones raise the shotgun and heard two shots before he lost consciousness. Morris received shotgun wounds to his eye, face, hand, arm, and hip.

Michael Mills was killed by pistol and shotgun wounds to the head. Donna Barrett died from a pistol wound to the brain. Two other witnesses testified that on the same morning they saw Darrell Stallings and Jessie Jones get out of a blue BMW automobile on a nearby street. Both witnesses saw Stallings and Jones exit the BMW and get into a red Ford Escort.

Damon Huff testified he had had possession of the blue BMW in exchange for cocaine received by Michael Mills, but that title to the car belonged to Mills. Huff further testified Stallings and Jones went with him to meet Mills in order to obtain title to the automobile. The three men drove the BMW and the Ford Escort to within a block of Barrett's residence. Huff stated he and Stallings entered the house first and that Jones entered shortly after with a shotgun. While Huff was talking with Mills about the drug deal, Stallings shot Mills, Barrett, and Morris, and Jones fired several shots at Morris before the three left.

Jessie Jones relied upon an alibi defense. He testified he spent the night with his girlfriend and was helping her children get ready for school at the time of the shootings. Jones also stated he spent the rest of the morning at his mother's house.

Huff was arrested soon after the incident. Stallings, however, escaped and was a fugitive at the time of Jessie Jones' trial. On

January 21, 1988, Jones made a statement to police which contained an admission that he knew Damon Huff and Darrell Stallings and had had contact with them on the morning of the incident. Further, Jones admitted he was told by Huff he could pay off a debt by going along on a transaction. This statement was introduced at trial over Jones' objection.

Jones was found guilty of the first-degree murders of Donna Barrett and Michael Mills and of aggravated battery against Julia Dawn and Frank Morris. This appeal followed.

The first issue is whether the district court erred in admitting the statement of Jessie Jones. Jones contends he was subjected to a custodial interrogation by police without receiving *Miranda* warnings and that any statement thus elicited was inadmissible evidence.

It is well established that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless the State demonstrates the use of procedural safeguards to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966); *State v. Roadenbaugh*, 234 Kan. 474, 476, 673 P.2d 1166 (1983). The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. In *State v. Bohanan*, 220 Kan. 121, 128, 551 P.2d 828 (1976), this court adopted the same test in stating that a person not arrested is not in custody unless significant restraints have been placed upon that person's freedom of movement. The point is further clarified by the court's distinction between custodial and investigatory interrogations. An investigatory interrogation is the questioning of a person by law enforcement officers in a routine manner in an investigation which has not reached an accusatory stage and where such person is not in legal custody or deprived of his freedom of action in any significant way. *State v. Bohanan*, 220 Kan. at 128; see *State v. Taylor*, 231 Kan. 171, 173, 642 P.2d 989 (1982); *State v. Costa*, 228 Kan. 308, 312, 613 P.2d 1359 (1980). The *Bohanan* court further stated that a determination of custodial interrogation must

be based upon a case-by-case analysis of the factual circumstances. 220 Kan. at 127.

In *Bohanan*, the defendant's name was given to a police detective as a possible suspect seen running from a murder scene. The detective had little information at this time and did not consider Bohanan a suspect; however, he left a message with Bohanan's family. Bohanan returned the call and agreed to talk with the officer. When the detective arrived at Bohanan's home, he agreed to talk with the officer outside in the police car. No *Miranda* warning was given to Bohanan, but when he made statements which raised the officer's suspicion all questioning ceased and Bohanan was taken into custody. 220 Kan. at 122-23.

This court determined that a custodial interrogation did not occur. The investigation was considered general in nature because the officer had little information and no warrant had been issued for Bohanan's arrest; nor was any evidence presented that Bohanan's freedom of action had been restrained. Thus, the court held that no *Miranda* warning was required. 220 Kan. at 128-29.

In the present case, police detective McKinney knew that he was looking for Damon Huff and Darrell Stallings. He had also received the names Jerome Carter, Little "J," and Little Jessie. McKinney left messages in several places and Jones returned McKinney's telephone call on January 21, 1988. Jones voluntarily agreed to meet with McKinney at the police station; he was neither under arrest nor a suspect at that time. Detective McKinney acknowledges that no *Miranda* warning was given to Jones prior to the interview.

McKinney testified that prior to the interview he did not know if Jessie Jones was involved with the crime and stated that after a one and one-half hour interview he did not find anything that linked Jones to the incident. A photo was taken of Jones prior to his departure from the police station and a witness soon thereafter identified Jones from a photo lineup. Subsequently, Jessie Jones was arrested and taken into custody.

Jones contends the statement he gave to Detective McKinney should have been suppressed because it was taken during a custodial interrogation with no *Miranda* warning. The State argues

that Detective McKinney was not required to issue a *Miranda* warning since there was no custodial interrogation.

First, we recognize that Jones went to the police station voluntarily. Because he was not under arrest, Jones was not subject to a custodial interrogation unless significant restraints were placed upon his freedom of movement. *State v. Bohanan*, 220 Kan. at 128. Similar to the *Bohanan* case, there is no evidence of any significant restraints placed upon Jones' freedom of movement. Not only did Jones go to the police station of his own accord, he remained for an interview that lasted more than one hour and then left the station without any restraints having been placed upon his movement. He was clearly not in police custody at that time. For this reason, we find no error in admitting Jones' statement into evidence.

The second issue is whether the district court erred in ruling that statements made by an unavailable codefendant to a witness were inadmissible hearsay.

Jones contends that Darrell Stallings had watched television with James Hudson on the evening following the crime. There, Stallings supposedly admitted to Hudson that he committed the crimes along with Damon Huff and a man from Missouri. Jones is from Kansas and argues that Stallings' statement to Hudson exonerates him of all guilt. The district court ruled, however, the statements by Stallings to Hudson constituted inadmissible hearsay.

Jones argues that the admission by Stallings should have been admitted into evidence as a declaration against interest, a hearsay exception. K.S.A. 1989 Supp. 60-460(j) provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(j) . . . Subject to the limitations of exception (f), a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected the declarant to civil or criminal liability or so far rendered invalid a claim by the declarant against another or created such risk of making the declarant an object of hatred, ridicule or social disapproval in the community that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

In addition to meeting the requirements of this statute, Jones must also make a showing of trustworthiness by the declarant. *State v. Prince*, 227 Kan. 137, 147, 605 P.2d 563 (1980). A trial judge has wide discretion in determining the admissibility of a declaration against interest and may consider such factors as the nature and character of the statement, the person to whom the statement was made, the relationship between the parties, and the probable motivation of the declarant in making the statement. *Thompson v. Norman*, 198 Kan. 436, 443, 424 P.2d 593 (1967).

Hudson's witness statement reveals that he did not know Darrell Stallings until the day the criminal events occurred. According to Hudson's statement, while watching the evening news about the shootings, Stallings told him that he had fired a couple of shots and hit someone during the shooting spree. Stallings further stated that Damon and another guy from Missouri were with him during the criminal event. Finally, Stallings stated that he wanted to get out of town and refused to turn himself in.

We find the district court erred in refusing to admit Hudson's testimony. The statements of Stallings were against his interest and therefore an exception to the hearsay rule. However, in light of the overwhelming evidence against Jones, the error is harmless.

The judgment of the trial court is affirmed.