NOT DESIGNATED FOR PUBLICATION

No. 111,447

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

VICTOR VALDIVIEZO-MARTINEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed November 25, 2015. Affirmed.

*Randall L. Hodgkinson* and *B. Keith Edward*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, of assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.

*Per Curiam*: Victor Valdiviezo-Martinez was convicted by a jury of the felony of identity theft. On appeal, Valdiviezo-Martinez argues that the State failed to present sufficient evidence to support the verdict by failing to establish that he acted with intent to defraud and that the offense occurred on the date alleged. He also argues that the identity theft statute is unconstitutionally vague.

We find no reversible error and affirm the conviction.

1

*Factual and Procedural Background*

In September 2012, Valdiviezo-Martinez was in a car accident in Johnson County. Police officers were dispatched to the accident and when they arrived, they tried to identify the people in the crash. Valdiviezo-Martinez gave police officers a Mexican identification card and an insurance card. The identification card had Valdiviezo-Martinez' name on it, but the name on the insurance card was Jovita Arano, who Valdiviezo-Martinez claimed was his wife. The name on the car's registration was Victor Arano. Because of the discrepancy, police thought Valdiviezo-Martinez might actually be Victor Arano. Valdiviezo-Martinez was arrested for driving without a license.

After booking him, police continued to investigate Valdiviezo-Martinez' identity. Police discovered Victor Arano was listed as working at a restaurant, Nick and Jake's. When Valdiviezo-Martinez was arrested, he was wearing a Nick and Jake's hat. Police then contacted the restaurant and discovered both Valdiviezo-Martinez and Victor Arano were employees. The restaurant also provided police with Valdiviezo-Martinez' W-4 and W-2. Both documents listed a social security number ending in 8670.

Police then contacted a special agent with the Social Security Administration. The special agent checked the social security number and discovered that it belonged to D.A.T. of Washington. As a result, Valdiviezo-Martinez was charged with identity theft, a level 8 nonperson felony. A jury found Valdiviezo-Martinez guilty, and the district court sentenced him 18 months' probation. Valdiviezo-Martinez now appeals.

*Intent to Defraud Is Established by Sufficient Evidence*

Valdiviezo-Martinez first argues the State failed to present sufficient evidence he acted with intent to defraud and, therefore, the jury could not have found him guilty beyond a reasonable doubt.

2

*Standard of Review*

In a criminal case, when the evidence's sufficiency is being challenged, this court's standard of review is "'whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Kesserling*, 279 Kan. 671, 679, 112 P.3d 175 (2005) (quoting *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 [2003]). To the extent statutory interpretation is required, this court's review is unlimited. See *State v. Vrabel,* 301 Kan. 797, 802, 347 P.3d 201 (2015).

*The Statute*

K.S.A. 2012 Supp. 21-6107(a) defines identity theft as:

"[O]btaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to defraud that person, or any one else, in order to receive any benefit."

*The Evidence*

This court has previously addressed the issue raised by Valdiviezo-Martinez regarding intent to defraud in *State v. Meza*, 38 Kan. App. 2d 245, 165 P.3d 298, *rev. denied* 285 Kan. 1176 (2007). This court determined that Meza, who had used someone else's social security number to obtain employment, had acted with intent to defraud because she induced the employer to believe that she was eligible to be hired when she was not. 38 Kan. App. 2d at 248-49. The court further noted that the employer invested in Meza various property rights and benefits which were attached to employment. 38 Kan. App. 2d at 249. The *Meza* panel's interpretation of intent to defraud under the identity

theft statute is supported by and is consistent with cited opinions of courts in Wisconsin and Illinois. 38 Kan. App. 2d at 249-50.

The plain language of the identity theft statute, as analyzed in *Meza*, supports the conclusion that Valdiviezo-Martinez acted with intent to defraud and committed identity theft. The State presented evidence that a social security number was a prerequisite for employment and that Valdiviezo-Martinez would not have been hired without one. The State's evidence also established that he used a social security number which was not his and which, in fact, belonged to another actual person. Valdiviezo-Martinez benefitted from improperly using the other person's social security number because his employer relied on the fact that he had provided a social security number in hiring him, retaining him in employment, paying him, and extending to him the benefits of employment status.

Valdiviezo-Martinez suggests that this court should rely on *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 24 P.3d 155, *rev. denied* 271 Kan. 1035 (2001). In *Vargas*, this court decided that Vargas did not act with intent to defraud by using a false identity only to get a job. 28 Kan. App. 2d at 870. In *Meza*, this court distinguished *Vargas*, noting that Vargas had used the identity of a "totally fictitious person" and the statute did not apply because it was intended only to protect the identity of real persons. 38 Kan. App. 2d at 248; see *State v. Oswald*, 36 Kan. App. 2d 144, 148-49, 137 P.3d 1066, *rev. denied* 282 Kan. 795 (2006). The social security number herein purloined by Valdiviezo-Martinez was established as belonging to a named, actual resident of another state.

We find the analysis and conclusions of *Meza* to be persuasive and dispositive of the issue regarding intent to defraud as applied to the facts of this case. The State's evidence was sufficient to support the jury's verdict.

*Identity Fraud Is a Continuing Offense*

In his second argument regarding sufficiency of the evidence, Valdiviezo-Martinez is essentially arguing that prosecution for identity theft was barred by the statute of limitations because the crime was actually committed in 2005 when he first obtained employment. He asserts that identity theft is not a continuing offense and the State presented insufficient evidence showing that he illegally used the social security number "on or about September 20, 2012."

*Standard of Review*

We review this issue subject to the same standards set forth above as applied in considering Valdiviezo-Martinez' first claim.

*The Law and Evidence*

Whether the State presented sufficient evidence showing that Valdiviezo-Martinez committed identity theft on or about September 20, 2012, depends on whether identity theft is a continuing offense. Generally, a crime is committed "either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." K.S.A. 2012 Supp. 21-5107(f). The same statute of limitation argument raised herein was also made in *Meza*, and this court succinctly stated:

> "It is clear that in enacting K.S.A. 2004 Supp. 21-4018(a) [identity theft], the legislature considered identity theft to be not a single act but a continuous course of criminal conduct. The very nature of identity theft involves more than the surreptitious acquisition of a victim's personal information. It includes the multitude of injurious acts which flow from the acquisition of that information." 38 Kan. App. 2d at 251.

5

The panel in *Meza* ultimately concluded that Meza's prosecution was timely because her course of conduct did not end until she was arrested. See 38 Kan. App. 2d at 250, 252.

Because identify theft is a continuing offense, the remaining question is whether the State presented sufficient evidence for the jury to find that Valdiviezo-Martinez' course of conduct continued after May 2005 and ended on or about September 20, 2012. In this case, the record indicates that Valdiviezo-Martinez initially used the social security number in 2005 when he filled out his W-4. The State also presented Valdiviezo-Martinez' W-2 from 2011 listing the same social security number. Valdiviezo-Martinez' employer testified that Valdiviezo-Martinez had worked there continuously from 2005 through September 2012. In fact, Valdiviezo-Martinez' last shift was September 19, 2012, the day before he was arrested. Essentially, even though Valdiviezo-Martinez first used the social security number in 2005, he continued to misrepresent his identity from 2005 to 2012. Every payday, Valdiviezo-Martinez accepted a paycheck he was not entitled to because he would not have been hired had he not used a social security number that did not belong to him. Therefore, Valdiviezo-Martinez' use of the social security number did not end until he was arrested.

Valdiviezo-Martinez argues that in *State v. Gainer*, 227 Kan. 670, 672, 608 P.2d 968 (1980), the Kansas Supreme Court stated that continuing offenses are "'a legal fiction'" and that other courts, including the United States Supreme Court, have taken a very limited view of continuing offenses. But this court addressed *Gainer* in its *Meza* decision and found that it was distinguishable. 38 Kan. App. 2d at 250-51. The panel noted that identity theft is a new crime, created after the *Gainer* decision, and after reviewing the legislative history, the panel concluded the legislature intended for identity theft to be a continuing offense, 38 Kan. App. 2d at 250-51. This conclusion was again consistent with the cited decisions of other courts in Wisconsin, Washington, Alabama, and Georgia. 38 Kan. App. 2d at 251-52.

6

Valdiviezo-Martinez also argues that this court's decision in *State v. Hernandez-Carballo*, No. 109,704, 2014 WL 3630348 (Kan. App. 2014) (unpublished opinion), is inconsistent with its decision in *Meza*. In *Hernandez-Carballo*, this court held that:

"K.S.A. 2011 Supp. 21-6107 does not require that the person actually receive benefits; the plain statutory language requires only that the person have *the intent to* defraud someone in order to receive any benefit. The intent alone is sufficient; there is no need to actually receive benefits." 2014 WL 3630348, at *6.

Valdiviezo-Martinez claims the *Hernandez-Carballo* holding, which does not require a specific act, contradicts the "multitude of injurious acts" language in *Meza*. In *Hernandez-Carballo*, this court was simply stating that intent to defraud could be proven, even if the defendant did not actually defraud anyone or receive any benefit because all the statute requires is the intent to defraud. See 2014 WL 3630348, at *5-6. In *Meza*, this court held that identity theft constitutes a continuing offense because it is the type of crime that allows a defendant to inflict multiple injuries on a victim over the course of time. See 38 Kan. App. 2d at 251-52. It does not appear that this court meant to imply that multiple injurious acts is an element of identity theft.

Once again, we find the analysis and conclusions reached in *Meza* to be persuasive and dispositive in determining that identity theft is a continuing offense. The State presented evidence showing that Valdiviezo-Martinez' use of the false identity was not terminated until his arrest on September 20, 2012, and this is sufficient for the jury to find that he committed identity theft on or about that date as alleged.

*The Identity Theft Statute Is Not Unconstitutionally Vague*

Valdiviezo-Martinez claims K.S.A. 2012 Supp. 21-6107 is unconstitutionally vague. More specifically, Valdiviezo-Martinez argues the statute "allows for arbitrary

and discriminatory enforcement." Valdiviezo-Martinez preserved this issue for appeal by raising it in a motion to dismiss.

*Standard of Review*

The constitutionality of a statute is a question of law over which this court has unlimited review. *State v. Scott*, 265 Kan. 1, 4, 961 P.2d 667 (1998). Further, when determining a statute's constitutionality, these guidelines apply:

> "The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt." *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 74, 697 P.2d 1310 (1985).

*The Statute*

This court has already addressed the constitutionality of the identity theft statute in two recent unpublished but persuasive opinions. In *State v. Bland*, No.108,272, 2014 WL 1362644, at *4 (Kan. App. 2014) (unpublished opinion), this court considered the predecessor statute, K.S.A. 2010 Supp. 21-4018(a), which is identical to K.S.A. 2012 Supp. 21-6107. The panel in *Bland* found that the statute gives citizens fair warning and protects against arbitrary and discriminatory enforcement because "it forbids using another person's identity to deceive someone with the intent to defraud anyone in order to receive a benefit related to some legal right, obligation, or power." 2014 WL 136244, at *4. As such, the identity theft statute "provides sufficient guidance for anyone who reads it." 2014 WL 136244, at *4. In *State v. Dillard,* No. 111,123, 2015 WL 2414317, *5 (Kan. App. 2015) (unpublished opinion) *petition for rev. filed* June 6, 2015, another panel

8

of this court specifically ruled that K.S.A. 2012 Supp. 21-6707(a) "is not unconstitutionally vague on its face."

K.S.A. 2012 Supp. 21-6107 employs commonly used words. The definition of "personal identifying information" set forth in K.S.A. 2012 Supp. 21-6107(e) lists items, all of which an average person would recognize and know. The term "intent to defraud" is defined in K.S.A. 2012 Supp. 21-5111(o), and has been judicially determined, which gives the phrase a settled meaning under the law. The term "benefit" is a commonly used word which most people understand. Nothing in the statute could be considered arcane or obscure.

Valdiviezo-Martinez argues simply that *Bland* was wrongly decided, taking issue with certain hypothetical situations discussed by the panel in that case. See 2014 WL 1362644, at *2, 4. He in turn presents several alternative hypotheticals in support of his position that the identity theft statute is unconstitutionally vague but cites no authority for the proposition that any of the scenarios involve actual illegal conduct. We find these arguments and hypotheticals to be unpersuasive and note that a statute will not be found unconstitutionally vague and struck down "because marginal cases could be put where doubts might arise. *In Re Brooks,* 228 Kan. 541, Syl. ¶ 8, 618 P.2d 814 (1980)." *State v. Copeland,* No. 109,600, 2014 WL 702526, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan.___ (March 12, 2015).

Based on the plain statutory language employed as considered in *Bland* and *Dillard,* we reiterate the conclusion that K.S.A. 2012 Supp. 21-6107 is not unconstitutionally vague.

Affirmed.

\* \* \*

9

ATCHESON, J., dissenting: The State sought to convict Defendant Victor Valdiviezo-Martinez of identity theft ostensibly because he used another person's social security number in September 2012. But the evidence, taken most favorably to the State, shows that Valdiviezo used the social security number 5 years earlier—well outside the governing statute of limitations. The jury sitting in Johnson County District Court, therefore, convicted Valdiviezo despite insufficient evidence, and that requires the conviction be reversed and judgment be entered in his favor. The State tries to salvage the conviction by arguing identity theft is a continuing offense, an argument the majority accepts. I respectfully dissent because a defendant's use of another person's identifying information, such as a social security number, does not create a continuing violation of the identity theft statute, K.S.A. 2012 Supp. 21-6107. Possession of such information with an intent to defraud, also criminalized in the statute, would be a continuing violation, but the jury was not asked to consider that form of the offense.

I begin with the salient facts drawn from the trial evidence, looking at the record favorably to the State as the prevailing party. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). When Valdiviezo began working at a restaurant in Johnson County in May 2005, he was required to provide a social security number or other identification as a condition of employment. Valdiviezo gave his employer a social security number he knew had been issued to someone else. On September 20, 2012, Valdiviezo was involved in a motor vehicle collision. As outlined in the majority opinion, law enforcement officers had a difficult time verifying Valdiviezo's identity because of the documents he presented to them. Those documents did not include a social security card or number. The officers contacted the restaurant where Valdiviezo still worked. That investigation eventually revealed Valdiviezo used a stolen social security number in 2005 to secure the job. The trial evidence does not show Valdiviezo otherwise presented or used the social security number.

10

The Johnson County District Attorney's office charged Valdiviezo with one count of identity theft occurring on September 20, 2012, a felony violation of K.S.A. 2012 Supp. 21-6107. The statute outlines the crime this way: "[O]btaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to defraud that person, or any one else, in order to receive any benefit." As I discuss, the statute criminalizes different kinds of activity, not all of which are legally equivalent. At the conclusion of the trial, the district court instructed the jurors they should convict Valdiviezo if he "used any personal identifying information . . . belonging to or issued to another person" with the requisite intent to defraud to receive a benefit on or about September 20, 2012, in Johnson County. The district court did not instruct the jurors on any other conduct criminalized in K.S.A. 2012 Supp. 21-6107(a). The jury convicted Valdiviezo.

On appeal, the issue has been framed as whether the evidence showed Valdiviezo "used" the social security number around the stated time and, thus, within the governing statute of limitations, since that is the purpose of charging the approximate date of the offense and including it in the jury instruction. See *State v. Aldrich*, 232 Kan. 783, 785-86, 658 P.2d 1027 (1983). The district court, however, did not instruct the jurors as to the limitations period—whether the State has prosecuted a crime within the applicable time limit presents a question for the jury at trial. See *State v. Palmer*, 248 Kan. 681, 699, 810 P.2d 734 (1991); *State v. Wyman*, 198 Kan. 666, 670, 426 P.2d 26 (1967). Nor did the trial lawyers argue to the jurors about a possible time bar to the prosecution. We may consider the point in assessing the sufficiency of the evidence that Valdiviezo used the social security number within the governing limitations period. If the evidence viewed in the State's favor demonstrates no timely use of the social security number, then the prosecution is legally deficient. When every factual dispute has been resolved in the State's favor and that version of the evidence cannot support a conviction, a court should

11

enter judgment for a defendant as a matter of law. *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007).

Before turning to that assessment, I mention several matters that do not affect this appeal. First, the legislature amended the identity theft statute between 2005 and 2012, but the changes have no material bearing on the issue here. Second, the legislature enlarged the controlling statute of limitations for many criminal offenses, including identity theft, from 2 years to 5 years as of July 1, 2005. L. 2005, ch. 162, sec. 1(4). Determining which limitations period applies here would present some questions that, at least superficially, seem challenging. But even if the 5-year period governs, the prosecution turns out to be too late, so I need not delve into those questions. I simply assume the proper time limit to be 5 years.

The limitation period stops running when the State charges the defendant. See K.S.A. 2012 Supp. 21-5107(g). That happened the day after the motor vehicle mishap. So if Valdiviezo used the social security number in May 2005 and was charged in September 2012, the State somehow has to bridge that gap of more than 7 years. The State does so with an argument that identity theft is a continuing offense and cites *State v. Meza*, 38 Kan. App. 2d 245, Syl. ¶ 7, 165 P.3d 298, *rev. denied* 285 Kan. 1176 (2007), in support of that proposition. The argument, however, cannot be reconciled with the plain meaning of the statutory language criminalizing "using" personal identifying information in contrast to "possessing" that information. Use of the information is a discrete violation; possession of the information is a continuing one. The *Meza* decision never examined the language of the statute and simply looked to some ambiguous legislative history to declare all of the criminalized actions to be continuing violations. 38 Kan. App. 2d at 250-51. As a result, *Meza* comes to an overly general—and largely erroneous— conclusion about identity theft.

12

Essentially, a "continuing offense" is, as the term suggests, a "course of conduct" that has been declared to be criminal. See *State v. Gainer*, 227 Kan. 670, 673, 608 P.2d 968 (1980). That concept has been effectively codified in K.S.A. 2012 Supp. 21-5107(f) recognizing that when the legislature "plainly appears" to prohibit a continuing crime, the "offense is committed . . . when the course of conduct or the defendant's complicity therein has terminated." Otherwise, a crime is committed "when every element occurs." K.S.A. 2012 Supp. 21-5107(f).

The identity theft statute contains no explicit legislative declaration that the crime in any of its forms should be treated as a continuing offense. See K.S.A. 2012 Supp. 21-6107. But that doesn't end the inquiry. If the statutory language necessarily describes a continuing violation, we should construe the language that way. A court is obligated to discern legislative intent and purpose from the plain meaning of the statutory language whenever possible. Indeed, the words of a statute reflect the cardinal source of such intent and purpose. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 998-99, 348 P.3d 602 (2015); *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). When the words of a statute are clear, they control the judicial interpretation. *University of Kan. Hosp. Auth.*, 301 Kan. at 999; *Urban*, 291 Kan. at 216. Absent statutory definitions, words should be given their ordinary meanings. 291 Kan. at 216. That is especially true of criminal statutes, since they must impart fair notice of the proscribed conduct to satisfy due process requirements. *State v. Schreiner*, 46 Kan. App. 2d 778, 785, 264 P.3d 1033 (2011), *rev. denied* 296 Kan. 1135 (2013).

Applying those precepts to "using" personal identifying information criminalized in K.S.A. 2012 Supp. 21-6107—here Valdiviezo's presentation of the social security number to his employer, I see nothing suggesting the statute treats that conduct as a continuing violation. The everyday meaning of the verb "to use" pretty much resolves any debate. The word has been defined as "to put into action or service . . . [to] employ" and "to carry out a purpose or action by means of." Merriam-Webster's Collegiate

13

Dictionary 1378 (11th ed. 2003). Similarly, the American Heritage Dictionary of the English Language 1907 (5th ed. 2011) defines "use" as "to put into service or employ for a purpose" and gives this example: "I used a whisk to beat the eggs." Those definitions describe distinct and finite acts. Thus, the common (and fair) understanding must be that Valdiviezo used the social security number when he provided it to his employer to secure his job. He did so with the intent to defraud the employer and to obtain a benefit in the form of pay. The elements of the crime were complete, and the limitations period began to run. That form of identity theft is not a continuing violation.

The State suggests that the employer's regular issuance of paychecks and W-2 earnings statements to Valdiviezo creates a continuing violation based on his use of the social security number. But the paychecks and the W-2 forms did not require Valdiviezo to again present a social security number to the employer. So they are more aptly characterized as effects of Valdiviezo's specific use of the social security number to obtain employment at the restaurant than they are as manifestations of a continuing violation. Many crimes have ongoing effects, but that doesn't make them continuing offenses. For example, someone shot during an aggravated robbery might be off work for an extended period recuperating and, thus, losing pay. Although the missed paychecks would be a continuing effect of the robbery and the shooting, they would not convert the crime into a continuing offense.

But "possessing" personal identifying information with the intent to defraud and obtain a benefit—another form of the crime outlined in K.S.A. 2012 Supp. 21-6107— looks to be a continuing violation. The concept of possession entails dominion over an object for some ongoing and often indefinite period. Merriam-Webster's Collegiate Dictionary 968 (11th ed. 2003) ("possess" defined as "to have and to hold as property"). Here, the State would have a fair argument that Valdiviezo possessed the purloined social security number throughout his employment at the restaurant and had a continuing intent to defraud his employer. After all, Valdiviezo never went to his boss and confessed that

14

the social security number didn't belong to him. So Valdiviezo's illicit possession of the number continued until September 2012 when it was discovered to be someone else's. The continuing offense of possessing the personal identification information terminated at that point, triggering the limitations period. A prosecution for that form of identity theft would have been timely. The jurors, however, were not instructed on possessing the social security number and couldn't have considered whether Valdiviezo committed identity theft that way.

In short, there was insufficient evidence to show Valdiviezo used the social security number in September 2012 or within the 5-year statute of limitations. However the issue may be characterized, the trial record cannot support a conviction of Valdiviezo for using the social security number. I would, therefore, reverse the conviction and enter a judgment of acquittal.

I haven't any particular disagreement with the majority's disposition of the other points Valdiviezo has raised. The evidence supported an intent to defraud, and K.S.A. 2012 Supp. 21-6107 doesn't seem to be unconstitutionally vague. But those points are superfluous given my view of how the case should be handled.

I do feel some obligation to more fully explain my disagreement with the *Meza* panel's conclusion that any violation of the identity theft statute must be a continuing offense. As I have already mentioned, *Meza* does not parse the statutory language at all and simply jumps to a brief review of part of the legislative history to declare every act criminalized as identity theft to be a continuing violation. The decision cites a statement from a leading legislative sponsor of the bill that became the identity theft statute expressing concern over the "multiple purposes" to which a pirated social security number could be put. *Meza*, 38 Kan. App. 2d at 250-51. The decision notes that two supporters of the bill affiliated with the Kansas Bureau of Investigation explained to a legislative committee that stolen personal identity information, such as a social security

15

number or a credit card, could be used to "'commit various criminal acts.'" 38 Kan. App. 2d at 251. The decision then observed the crime "includes the multitude of injurious acts which flow from the acquisition of that [personal] information." 38 Kan. App. 2d at 251.

I don't especially see how either the cited legislative history or that observation supports a holding making all identity theft crimes continuing offenses. Rather, the legislative history speaks to the serious repercussions that often flow from the illicit trafficking in or possession and use of personal identification information. And that history well supports the need to expressly criminalize a wide range of activity associated with such commerce, thereby filling a hole in the criminal code. But it says very little about scope or character of the criminal violations outlined in the statute. If anything, the legislative history would suggest at least some aspects of the crime should *not* be treated as continuing violations. The circumstances here are illustrative. Were using a stolen social security number a continuing violation, Valdiviezo presumably could be prosecuted for only one count of identity theft had he serially presented the number to various employers. So if he took a second, part-time job with another employer and provided the same social security number, that would simply be part of the ongoing criminal offense of using the number.

The statutory language, however, more readily suggests each use or presentation of the number could be charged as a separate violation. As a result, a defendant would face multiple charges and penalties, presumably increasing the statute's deterrent effect and enhancing its retributive impact commensurate with the seriousness of the offense, as described in the legislative history. At the same time, criminalizing possession of illicitly obtained personal identification information permits prosecution for a particular continuing violation, so someone situated as Valdiviezo could not escape all criminal liability based on a limitations bar. A plain reading of K.S.A. 2012 Supp. 21-6107(a) reflects a legislative intent to create both discrete criminal offenses, such as obtaining or using personal identification information, and a continuing offense based on possession.

16

The combination provides a more potent weapon against the pernicious effects of the crime than either alone. With that comment, I pass for another time the question of impermissible multiplicity in charging a defendant with *both* using and possessing the same personal identification information.

The *Meza* decision also relies, in part, on *State v. Jones*, 13 Kan. App. 2d 520, 775 P.2d 183 (1989), *aff'd* 246 Kan. 214, 787 P.2d 738 (1990), to suggest identify theft should be a continuing offense based on an employer's regular payment of wages to an employee who has adopted both the name and social security number of another person. 38 Kan. App. 2d at 251. In *Jones*, the defendant received welfare payments every month for her minor son even though he lived elsewhere. The court considered the charge of welfare fraud to be a continuing one because on a monthly basis Jones falsely represented to the State agency making the payments that the child lived with her. *Jones*, 13 Kan. App. 2d at 522, 525-26. The ongoing false representations meant the statute of limitations did not begin to run until the fraud was discovered and the payments terminated.

The *Meza* panel reasoned that Meza misrepresented her identity each time she "accepted, endorsed, and cashed a paycheck" made out in the name she had wrongfully appropriated. 38 Kan. App. 2d at 251. A person's name is considered personal identifying information, so use of a stolen name to defraud violates K.S.A. 2012 Supp. 21-6107(a), (e)(1). But that doesn't so much suggest a single, continuing violation as it does a new violation each time Meza cashed a paycheck using the misappropriated name. And Meza would have been guilty of at least one continuing violation for possessing both the stolen name and social security number throughout her employment.

Here, however, Valdiviezo did not misappropriate a name—only a social security number. So the paychecks were issued in his actual name, and presumably he negotiated them in that manner. Unlike Meza, Valdiviezo did not routinely and regularly rely on stolen personal identification information. And unlike Jones, Valdiviezo did not

17

affirmatively misrepresent his social security number to his employer on a recurrent basis. Even if *Meza* correctly characterized the criminal activity in that case as a single, continuing violation of the identity theft statute, the facts in this case are materially different. In turn, whatever support *Jones* might have lent to *Meza* is missing here.

The out-of-state authority *Meza* cites in support of its reading of the Kansas identity theft statute as creating only continuing violations proves underwhelming upon inspection. In *State v. Ramirez*, 246 Wis. 2d 802, 811, 633 N.W.2d 656 (Wis. App.), *rev. denied* 246 Wis. 2d 176 (2001), the appellate court found that a Wisconsin statute criminalizing use of misappropriated social security numbers and like information on its face appeared ambiguous with respect to continuing violations. To resolve the ambiguity, the court scoured the legislative history and found an article from *The Los Angeles Times* describing "the ongoing harm inflicted on victims of identity theft." 246 Wis. 2d at 811. The article proved epiphanic for the Wisconsin appellate court on the issue, prompting a holding that the statute created a continuing offense. But the newspaper article no more suggests the Wisconsin Legislature intended to treat every iteration of identity theft as a continuing violation than does the legislative history the *Meza* panel relied on to construe the Kansas statute. If anything, it is even more delphic as to legislative intent. As a result, *Ramirez* relies on a strange interpretive exercise to construe the Wisconsin statute, severely diminishing the decision's value as persuasive authority.

The *Meza* panel's reliance on *Ex parte Egbuonu*, 911 So. 2d 748, 753 (Ala. Crim. App. 2004), *reh. denied* January 21, 2005, and *State v. Mayze*, 280 Ga. 5, 7, 622 S.E.2d 836 (2005), is completely misplaced. In *Ex parte Egbuonu*, an Alabama appellate court held that state's identity theft statute permits a defendant to be prosecuted in either the county where the information had been used or in the county where the person whose personal information had been stolen resides. The issue before the court concerned appropriate venue and had nothing to do with the governing limitations period. In deciding the matter, the court referred to identity theft as a "continuing offense" to

explain the geographical scope of the crime, not its duration. In other words, the crime's venue, as defined in Alabama law, extends (or continues) to the residence of the individual rightfully possessing the personal information. Similarly, the Georgia Supreme Court held in *Mayze* that identity theft could be prosecuted in the county where "the victim resides or is found." 280 Ga. at 5. The *Mayze* decision also dealt only with venue and had nothing to say directly or by analogy about timely prosecution. 280 Ga. 5-6. Although the court referred to identity theft as a continuing crime in the sense it extends geographically to the victim's place of residence, that should not reasonably be taken to mean a given violation is temporally continuous rather than discrete.

Finally, in *State v. Leyda*, 157 Wash. 2d 335, 138 P.3d 610 (2006), a divided Washington Supreme Court held that a defendant's repeated presentation of another person's credit card number to various merchants amounted to a single violation of that state's identity theft statute. Though conceding the statutory language to be less than illuminating, the majority found the legislature intended the unit of prosecution to be tied to the personal identification information obtained or used. So a defendant would be guilty of a single violation for obtaining or using another person's credit card number no matter the number of transactions. 157 Wash. 2d at 345 ("Thus, once the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information."). The language of the Washington statute closely tracks K.S.A. 2012 Supp. 21-6107(a).

The *Leyda* majority's interpretation of the statute would, by logical extension, suggest identity theft to be a continuing violation for limitations purposes, although that question was not before the Washington Supreme Court. And the similarity of the Washington statute to the Kansas statute would permit that logical extension to serve as persuasive authority for the result in *Meza*. But *Leyda* isn't good law on that point. The

19

Washington Legislature responded to *Leyda* almost immediately by passing a measure defining the unit of prosecution to be each use or presentation of a credit card or other personal identifying information. See R.C.W. 9.35.001, as amended by L. 2008, ch. 207, secs. 1, 3. The declared purpose of the change was to legislatively overrule *Leyda*. L. 2008, ch. 207, sec. 1. That sort of legislative reaction indicates an appellate court has misconstrued the original intent or purpose animating a statute. As a result, *Leyda* retains no precedential value and has little, if any, persuasive weight.

In sum, the blanket interpretation of identity theft laid down in *Meza* is misguided. The statute criminalizes both discrete crimes and continuing offenses. Here, Valdiviezo was charged with using a stolen social security number—a discrete violation unsupported in the evidence based on the time of the crime. I would, therefore, reverse the conviction.